CLARK v. CHRYSLER CORPORATION.

DECISION OF THE COURT.

1. WORKMEN'S COMPENSATION—TOTAL AND PERMANENT DISABILITY— ADDITIONAL BENEFITS—EMPLOYER'S LIABILITY—SECOND INJURY FUND.

Denial of award for additional benefits under the workmen's compensation act for total and permanent disability to man who lost one hand and industrial use of other, following amendment of the act, is reversed and additional benefits awarded against both the employer and second injury fund (CL 1948, §§ 412.9, 412.10, as amended by PA 1956, No 195).

SEPARATE OPINION.

T. M. KAVANAGH, C. J., and SOURIS, SMITH, and ADAMS, JJ.

2. WORKMEN'S COMPENSATION—TOTAL AND PERMANENT DISABILITY— LOSS OF INDUSTRIAL USE—CONSTRUCTION OF STATUTES.

*Explicit definition in 1954 amendment of workmen's compensation act of total and permanent disability to include loss of both hands at or above the wrist and particularly the permanent and complete paralysis of both arms, while not including loss of industrial use of hands, held, so to limit definition of such*

REFERENCES FOR POINTS IN HEADNOTES

[1] 58 Am Jur, Workmen's Compensation § 296.
[2] 58 Am Jur, Workmen's Compensation § 283.
What amounts to total incapacity within workmen's compensation acts. 67 ALR 785, 98 ALR 729.
[3–5] 58 Am Jur, Workmen's Compensation §§ 26, 33, 281 *et seq.*
[6] 58 Am Jur, Workmen's Compensation §§ 26, 514, 515.
[7] 58 Am Jur, Workmen's Compensation § 283.
[8] 58 Am Jur, Workmen's Compensation §§ 26, 33, 283, 296.
[9] 58 Am Jur, Workmen's Compensation § 33.
[10] 58 Am Jur, Workmen's Compensation § 543.
Constitutionality, construction, application, and effect of provisions of workmen's compensation acts in relation to costs or expenses on appeal or review. 79 ALR 678.

*disability as to preclude recovery therefor, during time 1954 amendment was in force, by employee whose left hand was amputated but only thumb and 2 fingers of right hand were lost, in view of interpretation of statute before last amendment and subsequent amendment broadening definition to include loss of industrial use of both hands (CL 1948, §§ 412.9, 412.10, as amended by PA 1954, No 175, and PA 1956, No 195).*

3. SAME—AMENDMENT OF STATUTE—RECLASSIFICATION OF INJURIES —INCREASE OF SUBSEQUENT BENEFITS.

*An amendment of the workmen's compensation act may reclassify prior injuries, even when the effect thereof is to increase benefits payable by an employer thereafter for injuries received before the amendment without violating the Federal or State constitutional provisions (CL 1948, §§ 412.9, 412.10, as amended by PA 1956, No 195).*

4. SAME—TOTAL AND PERMANENT INJURY—LOSS OF INDUSTRIAL USE OF ARMS OR LEGS.

*Clause of portion added by amendatory act extending definition of total and permanent disability to loss of industrial use of arms or legs to determinations thereof made not less than 30 days before expiration of 500 weeks before effective date of the act precluded resurrection of stale claims (CLS 1956, § 412.10).*

5. SAME—AMENDMENT—LIABILITY FOR TOTAL AND PERMANENT INJURY.

*Both the employer's liability and the second injury fund's liability for total and permanent disability for loss of industrial use of both hands commenced on the effective date of the statute amending the workmen's compensation act (CL 1948, § 412.10, as amended by PA 1956, No 195).*

6. SAME—INCREASE OF BENEFIT PAYMENTS—SECOND INJURY FUND.

*Differential benefit payments of workmen's compensation are payable from the second injury fund for legislative increase in benefit rates by amendatory act, without application therefor (CLS 1956, §§ 412.9, 412.10).*

SEPARATE OPINION.

DETHMERS, KELLY, and O'HARA, JJ.

7. WORKMEN'S COMPENSATION—TOTAL AND PERMANENT DISABILITY— INJURY TO BOTH HANDS.

*The workmen's compensation appeal board erred in not finding plaintiff was totally and permanently disabled where left*

hand was amputated in the accident in November, 1954, and loss of thumb, index, and middle finger of right hand effected loss of industrial use of that hand (CLS 1956, §§ 412.9, 412.10).

8. SAME—AMENDMENT OF STATUTE—TOTAL AND PERMANENT DISABILITY—LOSS OF INDUSTRIAL USE—SECOND INJURY FUND.

Amendatory act which enlarged the definition of total and permanent disability to include loss of industrial use of specified members of the body as well as loss by amputation entitled the injured employee to differential benefits from second injury fund in amounts and number of weeks of compensation for injury to both hands which occurred before the amendment became effective (CL 1948, §§ 412.9, 412.10, as amended by PA 1956, No 195).

9. SAME—AMENDMENT OF STATUTE—TOTAL AND PERMANENT DISABILITY—EXPANSION OF DEFINITION—SECOND INJURY FUND.

Injured employee would not be entitled to workmen's compensation for total and permanent disability as of date of injury, where injury to both hands was not such as to bring him within definition of such disability as statute then read, differential benefits being payable from second injury fund pursuant to amendatory act specifying date when expanded definition of such disability was to take effect (CL 1948, §§ 412.9, 412.10, as amended by PA 1956, No 195).

10. SAME—COSTS—TOTAL AND PERMANENT DISABILITY—SECOND INJURY FUND.

No costs are allowed on reversal of determination of workmen's compensation appeal board and requiring entry of order granting plaintiff benefits from second injury fund as a person totally and permanently disabled (CLS 1956, §§ 412.9, 412.10).

Appeal from Workmen's Compensation Appeal Board. Submitted April 7, 1965. (Calendar No. 9. Docket No. 50,831.) Decided February 8, 1966. Rehearing denied April 5, 1966.

Willie Dee Clark, after receipt of compensation for specific losses due to injury sustained November 27, 1954, and after amendments to statute, presented his claim against Chrysler Corporation and State second injury fund for total and permanent disability benefits. Claim denied. Plaintiff appeals. Reversed and remanded with direction for

benefits to be paid by employer and with provision that upon any increase in benefit rate differential be paid from second injury fund.

*Kelman, Loria, Downing & Craig (Donald W. Loria,* of counsel), for plaintiff.

*Lacey & Jones (F. L. Sylvester,* of counsel), for defendant Chrysler Corporation.

SOURIS, J. On November 27, 1954, plaintiff Clark suffered an industrial accident while in the employ of defendant Chrysler Corporation. His left hand was amputated above the wrist and the thumb, index, and middle fingers of his right hand also were amputated. In 1961 a referee of the workmen's compensation department awarded plaintiff compensation benefits for the specific loss of each hand for two consecutive periods of 215 weeks. The referee had concluded that plaintiff's right hand was so badly injured by amputation of the thumb and two fingers that he no longer had the industrial use of that hand, thus qualifying for specific loss benefits for loss of that hand[1] as well as for loss of his amputated left hand pursuant to the specific loss provisions of section 10, part 2[2] of the act as amended by PA 1954, No 175. Plaintiff appealed the referee's ruling to the appeal board claiming to be totally and permanently disabled and entitled not only to weekly benefits for a period of 800 weeks from the date of injury as provided in 1954 by section 9, part 2[3] of the act, but, as well, to differential benefit payments from the second injury fund

[1] See *Shumate* v. *American Stamping Company* (1959), 357 Mich 689.
[2] CL 1948, § 412.10, as amended by PA 1954, No 175 (Stat Ann. 1955 Cum Supp § 17.160).
[3] CL 1948, § 412.9, as amended by PA 1954, No 175 (Stat Ann 1953 Cum Supp § 17.159, as amended).

as provided by section 9 after its amendment by
PA 1955, No 250 and by PA 1956, No 195.[4]     The
appeal board, by split decision, rejected plaintiff's
claims for total and permanent disability benefits
and for differential benefit payments from the sec-
ond injury fund and affirmed the decision of the
referee awarding plaintiff a total of 430 weeks com-
pensation benefits for his specific losses of both
hands.

This case of Clark is somewhat similar to *Lie-
singer* v. *Owen-Ames-Kimball Company*, 377 Mich
158.     A significant factual difference exists, how-
ever, which requires in this case our consideration
of the applicability of the 1956 amendment to a
prior injury found to have resulted in loss of in-
dustrial use of both of claimant's hands.     Plaintiff
Clark's injury occurred in November of 1954, after
the August 13, 1954 effective date of PA 1954, No
175, and before the August 1, 1956 effective date of
PA 1956, No 195.     Before and after that interim
period our workmen's compensation law provided
total and permanent disability benefits for those
injured employees who had lost the industrial use
of both their hands, by judicial construction prior
to the 1954 act, see *Rench* v. *Kalamazoo Stove and
Furnace Co.* (1938), 286 Mich 314, and by the fol-
lowing italicized statutory language after amend-
ment of section 10 by the 1956 act:

"Total and permanent disability, compensation
for which is provided in section 9 hereof, means:
"(1) Total and permanent loss of sight of both
eyes.
"(2) Loss of both legs or both feet at or above
the ankle.
"(3) Loss of both arms or both hands at or above
the wrist.

---

[4] See CLS 1961, § 412.9 (Stat Ann 1960 Rev § 17.159).—Reporter.

"(4) Loss of any 2 of the members or faculties enumerated in (1), (2) or (3).

"(5) Permanent and complete paralysis of both legs or both arms or of 1 leg and 1 arm.

"(6) Incurable insanity or imbecility.

"(7) *Permanent and total loss of industrial use of both legs or both hands or both arms or 1 leg and 1 arm; for the purpose of this subsection (7) such permanency to be determined not less than 30 days before the expiration of 500 weeks from the date of injury.*"[5]

The statutory language we construed in *Rench, supra,* to include industrial loss of use of both hands as total and permanent disability, which language remained in section 10 of the act until its 1954 amendment, read as follows:

"The loss of both hands, or both arms, or both feet, or both legs, or both eyes, or of any 2 thereof, shall constitute total and permanent disability, to be compensated according to the provisions of section 9."

As I pointed out in my opinion in *Liesinger, supra,* we construed that language in *Rench, supra,* as nonexclusive of other injuries which could be found to be total and permanent disabilities. Such a construction hardly can be given the amendatory language first appearing in 1954 which commences, "Total and permanent disability  *  *  *  means:" and then proceeds to list six specifically defined losses among which are "(3) Loss of both arms or both hands at or above the wrist" and "(5) Permanent and complete paralysis of both legs or both arms or of 1 leg and 1 arm." It is significant that in 1954 the legislature changed the statutory provision from language which described some, but not all, losses included among those described as total

---

[5] CLS 1961, § 412.10 (Stat Ann 1960 Rev. § 17.160).—REPORTER.

and permanent disabilities to language which purported to list definitively all such losses. *Verberg v. Simplicity Pattern Company* (1959), 357 Mich 636. It is significant, also, that permanent and complete paralysis of legs and arms is among the losses listed in the 1954 amendment, suggesting to me that any diminution in use of legs and arms less than permanent and complete paralysis thereof was not included any longer in the meaning of total and permanent disability. If the legislature had intended to adopt the *Rench Case's* construction of the pre-1954 language as part of the construction of subsection (3) added by the 1954 amendment, "Loss of both arms or both hands at or above the wrist", it would have been unnecessary to add subsection (5), "Permanent and complete paralysis of both legs or both arms or of 1 leg and 1 arm", for such paralysis certainly would have constituted loss of industrial use thereof within our holding in *Rench*.

I do not regard the words "at or above the wrist", appearing in subsection (3) of any significance to the question whether loss of industrial use of both hands is included in that subsection. Were it not for the presence of subsection (5) in the 1954 amendment, I would hold that subsection (3) should be construed to include loss of industrial use of both hands. We have had no difficulty construing quite similar language in section 10 which provides for payment of weekly benefits for specific periods for the loss of thumbs, fingers, toes and phalanges thereof; hands; arms; feet; legs; and eyes, to include the loss of industrial use of a hand as well as the amputation thereof and notwithstanding a provision in that part of the section that "An amputation between the elbow and wrist 6 or more inches below the elbow shall be considered a hand,

above this point an arm". See *Shumate* v. *American Stamping Company* (1959), 357 Mich 689; *Lentz* v. *Mumy Well Service* (1954), 340 Mich 1; *West* v. *Postum Co., Inc.* (1932), 260 Mich 545; and *Lovalo* v. *Michigan Stamping Co.* (1918), 202 Mich 85.

Addition of subsection (7) by PA 1956, No 195, confirms for me the conclusion that between the 1954 and 1956 amendatory acts, for reasons which are inexplicable, the legislature did not provide for payment of total and permanent disability benefits to those injured employees whose injuries resulted in the loss of industrial use of both hands unless resulting from paralysis of both arms or from amputation of both hands. The question then becomes whether the 1956 addition of subsection (7) can be applied to qualify for total and permanent disability benefits an employee whose industrial injury in November of 1954 resulted in the loss of industrial use of his hands.

In *Lahti* v. *Fosterling* (1959), 357 Mich 578, this Court held that the legislature could, by amendment of the workmen's compensation law, increase an employer's liability *thereafter* for hospital and medical expenses of an employee injured before the amendment without violation of Federal or State constitutional provisions. Our holding in *Lahti* and the authorities relied upon therein, particularly *Matter of Schmidt* v. *Wolf Contracting Co.* (1945), 269 App Div 201 (55 NYS2d 162), affirmed 295 NY 748 (65 NE2d 568), and *Matter of Hogan* v. *Lawlor & Cavanaugh Co.* (1955), 286 App Div 600 (146 NYS2d 119), support my conclusion that the legislature lawfully can reclassify by amendatory act prior injuries even when the effect thereof is to increase the benefit payments payable therefor, at least when the employer's liability for the

increased benefit payments arises only *after* the effective date of the amendatory act. This, I believe, is what the legislature effectively accomplished by PA 1956, No 195.

The second clause of subsection (7), added to section 10 by the 1956 amendment, reads, "for the purpose of this subsection (7) such permanency [of loss of industrial use] to be determined not less than 30 days before the expiration of 500 weeks from the date of injury". That language, applicable only to subsection (7) and not to the other six subsections, effectively limits its application to future injuries and to only those prior injuries which occurred within 30 days less than 500 weeks before the effective date of the act, thus precluding resurrection of ancient claims.

Furthermore, nothing in the amendment so much as suggests legislative effort to make the employer's liability under subsection (7) for prior injuries retroactive in the sense that increased benefits be payable for periods preceding the effective date of the 1956 amendment. Absent any statutory language so purposed, the constitutionality of which we need not determine, subsection (7) must be construed to require payments to plaintiff by the employer of total and permanent disability benefits for loss of industrial use of legs, hands, or arms only on and after the effective date of the 1956 amendment. As a matter of fact, the 1956 amendment changed section 9 to provide that differential benefit payments required by that section to be paid from the second injury fund to certain permanently and totally disabled persons, as defined in sections 8a[6] and 10, commence after the effective date of the 1956 amendment. Thus, both the employer's liability and the second injury fund's liability arising

[6] CLS 1961, § 412.8a (Stat Ann 1963 Cum Supp § 17.158[1]).

under subsection (7) commenced upon August 1, 1956, the effective date of PA 1956, No 195.[7]

---

[7] There is disagreement and confusion among counsel and my Brethren regarding the significance of the reference to June 25, 1955, added to section 9 by the 1956 amendment. Before the 1956 amendment, section 9, as amended by PA 1955, No 250, contained the following language:

"Any person who is permanently and totally disabled and who is receiving payments of workmen's compensation which are payable to such person under this act in amounts per week of less than is presently provided in the workmen's compensation schedule of benefits for permanent and total disability and for a lesser number of weeks than the duration of such permanent and total disability shall hereafter receive weekly, without application, from the second injury fund, an amount equal to the difference between what he is now receiving per week and the amount per week now provided for permanent and total disability with appropriate application of the provisions of paragraphs (b), (c), (d) and (e) of this section since the date of injury. Payments from this second injury fund shall continue after the period for which any such person is otherwise entitled to compensation under this act for the duration of such permanent and total disability according to the full rate now provided in the schedule of benefits."

The 1956 amendment changed the language to read:

"Any permanently and totally disabled person as defined in sections 8a and 10 who, on or after June 25, 1955, is entitled to receive payments of workmen's compensation under this act in amounts per week of less than is presently provided in the workmen's compensation schedule of benefits for permanent and total disability and for a lesser number of weeks than the duration of such permanent and total disability shall after the effective date of this amendatory act receive weekly, without application, from the second injury fund, an amount equal to the difference between what he is now receiving per week and the amount per week now provided for permanent and total disability with appropriate application of the provisions of paragraphs (b), (c), (d) and (e) of this section since the date of injury. Payments from this second injury fund shall continue after the period for which any such person is otherwise entitled to compensation under this act for the duration of such permanent and total disability according to the full rate provided in the schedule of benefits."

I suggest that the June 25, 1955, date was inserted in section 9 by the 1956 amendment in order to correct a legislative oversight in the adoption of PA 1955, No 250, in failing to refer in section 9 to section 8a when describing the persons permanently and totally disabled who would be entitled to the differential benefits from the second injury fund. Thus, the 1955 amendment, in the language above quoted, provided that those qualifying as permanently and totally disabled (as defined only in section 10) were entitled to differential benefit payments. But in the 1956 amendment the legislature included among those entitled to the differential benefits of section 9 those permanently and totally disabled as defined in section 8a, as well as in section 10, and in order to rectify its 1955 oversight, as to section 8a claimants, made the provision retroactively applicable to those qualified to receive total and permanent disability benefits on

The appeal board should have modified the referee's order to provide, after payment of specific loss benefits from November, 1954 to August, 1956, for payment to plaintiff *by his employer* of total and permanent disability benefits for the period commencing August 1, 1956 and ending 800 weeks from November 27, 1954, the date of plaintiff's injury, at the benefit rate for total and permanent disability provided by the act on August 1, 1956.

Upon legislative increase in the benefit rate for total and permanent disability, plaintiff will be entitled to differential benefit payments *from the second injury fund* as provided in section 9 without application therefor.

I would vacate the order of the appeal board and remand for entry of an order in conformance with this opinion. Costs may be taxed in favor of plaintiff.

T. M. Kavanagh, C. J., and Smith, and Adams, JJ., concurred with Souris, J.

Black, J., concurred in result.

or after June 25, 1955, the effective date of PA 1955, No 250. Of course, those so qualified by the definitions of section 10 were already covered as of June 25, 1955, the effective date of PA 1955, No 250, by the reference in the 1955 amendment to section 10 definitions. Thus, reference to that effective date in the 1956 act can apply only to those injured employees defined as totally and permanently disabled by section 8a. Whether inclusion of that date was effective to entitle section 8a claimants to differential benefit payments as of June 25, 1955, and thus on a parity with section 10 claimants who fell within the original six classifications of total and permanent disability, is doubtful in view of the later provision in section 9, also added by the 1956 amendment, that the 1956 amendments to section 9 would not be effective until the effective date of PA 1956, No 195. Whether effective or not, that is the only rational explanation I can perceive for the legislature's reference to June 25, 1955, in the 1956 amendment of section 9. In any event, it does not lend any support to defendant Chrysler's claim that the 1956 amendment is not applicable to impose liability upon employers for injuries occurring prior to the 1956 amendments.

KELLY, J. (*concurring in reversal and remand*). November 27, 1954, plaintiff suffered an injury resulting in a complete amputation of his left hand and the loss of his thumb, index, and middle fingers of his right hand.

The referee held that plaintiff had suffered an amputation of the left hand and the loss of industrial use of the right hand, but held that plaintiff did not qualify as a totally and permanently disabled person under part 2, § 10, of the workmen's compensation act, as written at the time of the injury,* and excluded him from differential benefits from the second injury fund.

The chairman of the appeal board held that plaintiff was totally and permanently disabled and that the referee's holding should be set aside, but he was overruled by the other two members of the board, who affirmed the referee's award.

Both appellant and appellee Chrysler Corporation agree that the employee is totally and permanently disabled. Appellant contends, however, that he is entitled to benefits from either the employer or the second injury fund, and appellee employer contends the employee is entitled to benefits only from the second injury fund.

The appeal board members who affirmed the referee stated in their opinion:

"Prior to the *Verberg Case* [*Verberg* v. *Simplicity Pattern Company*, 357 Mich 636], I would have agreed with the chairman's conclusions because at that time I, too, held to the opinion that the term 'total and permanent disability' referred to those who had qualified prior to the amendment the same as it did to those who would qualify under terms of the amendment. I, too, was of the opinion that the primary purposes of these amendments 'was to

---

* CLS 1954, § 412.10 (Stat Ann 1955 Cum Supp § 17.160).

tie together any loose ends about which one might quibble as to when and where, if at all, you should draw the line between the loss of a member and the loss of use of same.' I could not believe that it was the legislative intent to restrict the term 'total and permanent disability' to those who had lost so many pounds of flesh and exclude those who still had the flesh but had lost the capacity to use it. I, too, could not believe that 'it was the legislative intent to make a distinction as between them when determining  *  *  *  justification for the classification of being truly a totally and permanently disabled person.' I so expressed myself in an opinion entered in *Verberg, supra.* The Supreme Court did not agree and I shall honor their holding.

"Plaintiff's loss does not fall within the restrictive definition which requires the loss of both hands to be 'at or above the wrist.' This was the definition of 'total and permanent disability' which was in effect at the time this employee's cause of action accrued. The Supreme Court's holding in *Verberg, supra,* that 'the effect of this amendment to section 10 was to limit permanent and total disability in section 9 to the items defined in section 10' is here controlling. It was not until PA 1956, No 195, that an injury such as that suffered by plaintiff was again deemed to be a total and permanent disability. With reluctance, I dissent from the chairman's holding but trust that he has expressed the legislature's intent more clearly than I did previously. I vote to affirm the referee's award."

Appellee Chrysler Corporation, in its brief, disagreeing with the appeal board's conclusion, does not even refer to *Verberg* v. *Simplicity Pattern Company, supra,* and appellant, claiming that "*Verberg* is not contrary to plaintiff's position but is, indeed, supportive thereof," states:

"Verberg's injury date was December 10, 1947. His disability was caused by inhalation of chrome

and consisted of pulmonary injury. Verberg did not, at time of his injury or ever after, have a disability which was classified as total and permanent under any one of the 7 subsections of section 10. Justice DETHMERS stated the question (pp 639, 640):

" 'The question on this appeal is whether a person who is permanently and totally disabled as a matter of fact, but not as defined in part 2, § 10, of the act, is entitled to the differential benefits under section 9(a) as above quoted.'

"The Court then proceeded to adopt the attorney general's opinion which answered in the negative. The reasoning was that differential benefits from the second injury fund were due only to those persons who fell into the classifications provided for in section 10.

" 'We approve and adopt the quoted language from the attorney general's opinion. As above quoted, section 10 provides that: "Total and permanent disability, compensation for which is provided in section 9 hereof means:" thereafter follows the list of specific injuries or losses as set forth in the above quotation of section 10.' (*Verberg,* pp 641, 642.)

"It is assumed that Verberg would have been granted differential benefits if he had been properly classified. Clark was properly classified and is, therefore, entitled to such benefits."

*Verberg* is not controlling in the instant case, and we agree with appellant and appellee Chrysler Corporation that the appeal board erred in not finding that plaintiff is totally and permanently disabled.

In determining the question whether plaintiff is entitled to benefits from the employer or the second injury fund, we consider the past legislative and judicial history *in re* total and permanent disability.

The 1954 legislature decided that henceforth it would define classifications which would constitute

"total and permanent disability" and no longer allow such disability to be decided from such facts as the commission deemed advisable. The legislature listed in part 2, § 10, six classifications, namely:

"(1) Total and permanent loss of sight of both eyes.

"(2) Loss of both legs or both feet at or above the ankle.

"(3) Loss of both arms or both hands at or above the wrist.

"(4) Loss of any of 2 of the members or faculties enumerated in (1), (2) or (3).

"(5) Permanent and complete paralysis of both legs or both arms or of 1 leg and 1 arm. :

"(6) Incurable insanity or imbecility." (PA 1954, No 175.)

To decide the question here presented to this Court, consideration must be given to an amendment provided by PA 1955, No 250, and an addition and amendment by PA 1956, No 195.

By PA 1955, No 250, a portion of part 2, § 9(a), of the act, was amended to read:

"Any person who is permanently and totally disabled and who is receiving payments of workmen's compensation which are payable to such person under this act in amounts per week of less than is presently provided in the workmen's compensation schedule of benefits for permanent and total disability and for a lesser number of weeks than the duration of such permanent and total disability shall hereafter receive weekly, without application, from the second injury fund, an amount equal to the difference between what he is now receiving per week and the amount per week now provided for permanent and total disability."

PA 1956, No 195, made two significant changes to portions of the workmen's compensation act here

pertinent. A seventh classification was added to section 10, as follows:

"(7) Permanent and total loss of industrial use of both legs or both hands or both arms or 1 leg and 1 arm; for the purpose of this subsection (7) such permanency to be determined not less than 30 days before the expiration of 500 weeks from the date of injury."

Also, by PA 1956, No 195, the above quoted portion of part 2 § 9(a), was amended to read:

"Any permanently and totally disabled person as defined in sections 8a and 10 who, on or after June 25, 1955, is entitled to receive payments of workmen's compensation under this act in amounts per week of less than is presently provided in the workmen's compensation schedule of benefits for permanent and total disability and for a lesser number of weeks than the duration of such permanent and total disability shall after the effective date of this amendatory act receive weekly, without application, from the second injury fund, an amount equal to the difference between what he is now receiving per week and the amount per week now provided for permanent and total disability."

In support of the claim that the law in effect as of November 27, 1954, the date of injury, provided for plaintiff's classification as a totally and permanently disabled person, plaintiff calls attention to the fact that PA 1954, No 175, defined total and permanent disability to include: "(3) Loss of both arms or both hands at or above the wrist," but did not provide that the loss would have to be by amputation; that in *Lovalo* v. *Michigan Stamping Co.*, 202 Mich 85, and, also, in *Shumate* v. *American Stamping Co.*, 357 Mich 689, this Court stated that amputation is not a prerequisite to an award for loss of a hand; that this Court has repeatedly held

that the workmen's compensation act is remedial legislation and must be liberally construed for the benefit of the injured workman and, plaintiff states:

"The language of the amendment could provide two possible constructions. The first is that the described loss *must be* by amputation. The second is that the described loss *may be* by amputation *or* by loss of use. Plaintiff urges the second construction because it is in accord with prior Supreme Court constructions of the term 'loss of a hand' and because it is the more liberal construction which the Court is required to choose."

In concluding that appellant is entitled to benefits for total and permanent disability payable from the second injury fund, we quote with approval the following from appellee Chrysler Corporation's brief:

"By PA 1956, No 195 the legislature enlarged the definition of total and permanent disability to include loss of industrial use, as well as loss by amputation. The same amendatory act provided that persons who had these injuries *before* the amendatory act, and on or after June 25, 1955, should be entitled to differential benefits in amounts of compensation and in the number of weeks of compensation. We believe the legislative plan was to give the enlarged benefits to those who prior to the amendatory act did not qualify as totally and permanent[ly] disabled, and that these enlarged benefits should come from the second injury fund. The coupling of these two changes in the same amendatory act compels the conclusion.

"We do not agree with appellant's contention that he is entitled to total and permanent disability benefits because he met the statutory definition on the date he was injured, November 27, 1954. We believe that this contention is patently unsound because it would make meaningless the amendatory

provisions of PA 1956, No 195. The definition of losses made total and permanent disability before this act named a particular physical point where the loss had to occur before the definition was met, *viz:* 'at or above the ankle,' 'at or above the wrist.' This clearly means a loss by amputation, for if not, why add the seventh category of industrial loss of use.

"We do not agree with appellant's contention that the amendment of 1954, PA 1954, No 175, was not clear, and did not limit the definition of total and permanent disability to the first six classifications now spelled out in subsections (1) through (6) of section 10 of part 2. Appellant's argument that the addition of subsection (7) by PA 1956, No 195 just further clarified the definitions made by PA 1954, No 175, totally ignores the fact that the addition of subsection (7) in the 1956 amendment was coupled with changes in section 9, subd (a) awarding differential benefits from the second injury fund. * * *

"When the legislature expanded the definition of total and permanent disability, and by the same amendatory act provided for payments of differential benefits for injuries existing at a *particular* time (June 25, 1955) *prior* to the effective date of the amendatory act it left the clear impression that it had no intention of making the expanded definition effective to a time prior to the particular time mentioned. If it did, why mention a particular date?

"The changes brought about by PA 1956, No 195 should be considered together. When so considered they compel the conclusion that appellant should receive total and permanent disability benefits from the second injury fund.

"Wherefore, appellee Chrysler Corporation prays that the determination of the workmen's compensation appeal board be reversed, and the case remanded to the workmen's compensation appeal

board for entry of an order granting plaintiff benefits from the second injury fund as a person totally and permanently disabled."

The determination of the workmen's compensation appeal board is reversed and the case is remanded to the workmen's compensation appeal board for entry of an order granting plaintiff benefits from the second injury fund as a person totally and permanently disabled. No costs.

Dethmers and O'Hara, JJ., concurred with Kelly, J.